Good morning, Your Honor. May it please the Court, Diego Rodriguez on behalf of the appellant, Sean Stewart. Your Honor, we're here today to address what we believe was a denial of procedural and substantive due process to my client. When Mr. Stewart was sentenced, prior to that taking place, we had asked for access to documents that the government had previously produced to Congress in the course of the investigation. During the pendency of that litigation, the government did not claim that those materials were not in its possession or that it was not available to get them or that the production would have been onerous. They merely made the argument that they're not exculpatory to the extent that they go to my client's guilt. We raised the issue that we were interested in having them for the purpose of sentencing, more specifically the application of the Did you waive the right to appeal in the plea agreement? Your Honor, there is a written waiver of the right to appeal in the plea agreement, but that is, as we've stated in our pleadings and our briefings, subject to an exception, and we think that's an important exception that should be applied in this case. What exception is that? To begin with, the government did, on the record, in another pleading, concede that my client's claims were reviewable on appeal. Well, what they said was you could raise a Brady violation. Yes. Okay. What you raise now is a breach of the plea agreement, isn't it? That is part and parcel of the Brady violation, Your Honor. The Brady violation is, in fact, the breach of the plea agreement. Well, let's start with just the breach of the plea agreement for a second. I don't see anywhere where you raised a breach of the plea agreement in the district court. Your Honor, that's a question that was raised by the government. We would submit that the breach of the plea agreement in regards to the application of the appeal waiver is best brought in front of the court that will have jurisdiction over the appeal. Well, I don't know about that. My question to you is, I don't see where you ever complained to Judge Tilburg that the government breached the plea agreement. Oh, excuse me, Your Honor. The issue of whether the Is that true? Is that true? Yes, but Never raised in district court a breach of the plea agreement. The district court, in the motion to compel, we had asked the court to produce those documents. Right. You made a motion to compel. Yes. You didn't say, hey, they breached the plea agreement. No. Not explicitly, Your Honor. Not at all. I mean, your remedy of the breach of the plea agreement is you get out of the plea agreement. Well, Your Honor, this is a case where the relief isn't necessarily the best relief for my client isn't necessarily to escape entirely from the plea agreement. In any case, breach of the plea agreement was never raised in district court. The breach of the plea agreement was not raised in district court. That is correct, Your Honor. Okay. So now we've got an appeal waiver, and you brought an interlocutory appeal raising Brady. Yes. And they say you can't bring an interlocutory appeal because the case isn't over. You can always raise Brady on a direct appeal. Yes. Okay. Now, when you brought your interlocutory appeal, were you arguing for or seeking more information than merely Brady material? We were seeking information directly related to the Brady material, Your Honor, which went to the sentencing. That's a weasel answer. Were you seeking information beyond information that would have been required under Brady? It's a difficult question, Your Honor, not knowing the exact nature of the materials I produced to Congress. Well, as I read your papers in terms of what you were after, you were very explicitly saying, we want information that will help inform the district judge as he does his sentencing. Yes. Well, sentencing already is – already presumes guilt. Correct. That is to say, if we're at sentencing, I don't know if we're talking about Brady material at all. Well, Your Honor, we have – I mean, you're not challenging guilt at that point. You're just saying, what are the factors that should go into the district court's consideration under 3553? Your Honor, it is our – it is our position that Brady material does include material that's relevant to sentencing, to mitigation as well. We have taken that position in our payings, and we continue to espouse that position at this time. Yeah. Because – I don't want to hide the ball. In my view, you're better off arguing that you were seeking more information than merely Brady information if you're trying to argue judicial estoppel. Your Honor, to the extent that we know that there are relevant materials still out there and that it should be made available to us, that is, again, part of our claim that he – my client was not only deprived of procedural due process, but also substantive due process. So whether it's put in terms of Brady material or materials that are relevant and go beyond Brady, we believe they are important and they are – What's the basis of that belief? What's the basis of that belief? They gave you boxes and boxes of stuff, all the reports and everything. What reason do we have to think there's anything mitigating in these additional 7600 pages that you want? Your Honor, if you're looking at – clearly, there's no dispute that Congress devoted a great deal of attention to the method and manner of this investigation and how it was conducted. However, their goals, as we've stated in our pleading, were not the same goals that we have. It begs the question, then, if enough people were concerned to look at the method and manner of this investigation and people have been held accountable for the method and manner of this investigation, then clearly there are facts that will go to my client's conduct in this case and how it related to the government's decision to have it. Give me an – I don't understand what you're talking about. Give me an example of what would be mitigating that would give your guy a better sentence. Your Honor, in this case, the government made choices. It made choices as to which defendants it was going to prosecute and how it was going to prosecute them to the extent that there was another cooperating defendant in this case that the government was aware of, that the government that was operating with the full knowledge of, albeit a different agency, the FBI in that case, not the ATF, which is the ATF, which is the agency in this case. But, however, the government was making choices. It was making policy decisions as to which defendant was going to be allowed to engage in what conduct. And then, in turn, what was going to happen with those weapons. And so – I want to see how that mitigates your guy. Your Honor, the issue of – the issue of if there was any discussion between the handlers of the other defendants or the other cooperating defendant and my – and my client, clearly there were, as stated in different places in the reports, the government was aware of my client's conduct. But it was – he was allowed to engage in certain conduct in order to further the overall aims of the investigation. So? And this is – Go on. I'm sorry, Your Honor. And this is a distinction from what would normally happen in an undercover operation. Primarily because you have the government allowing an inherently dangerous item, in this case, guns, being exported into another country. Great. They shouldn't have done that. But how does that mitigate your guy's conduct? Because it puts my client in the position that he's being manipulated and he is being – he is being, yes, for lack of a better word, manipulated by a government agency in order to further some other broader policy that isn't necessarily – Yeah. That may be true. But I've got two issues with that. Number one, following along with Judge Silverman, I'm not sure that it makes much difference. But number two, I think that argument and the facts to support that argument are already before the district court. I'm not sure that the information you're seeking helps you flesh that out at all. Your Honor, this is part of – we would concede that it is a bit of a frustrating proposition to try to explain it. But the essence of, for example, the guidelines which were applied here, one of the manners of relief that we can try to avail ourselves of is can we show that it lies outside of the heartland? Is this a typical case? Is this something that the Sentencing Commission would have contemplated taking place when it was drafting those guidelines? So we can scratch the surface, and we do concede that there is some information. But again, with – unless there's a third – neutral third party who has at least looked at these items and that can come back to – Did you ask for in-camera inspection by the district judge? No, Your Honor. We asked for the production. I will tell you that it did not occur to me to ask the court to perform an in-camera inspection when we were asking for the production, because in my experience, the normal progression is it's always within a court's inherent powers to fashion relief that is let – if it believes that something is onerous, it can fashion – it can default to a less onerous method in that matter of relief. And I'll reserve the last question. Thank you, Mr. Rubin. Thank you. Good morning, Your Honor. Shane Harrigan, assistant United States attorney from the Southern District of California, appearing on behalf of the appellee of the United States. May it please the Court. Because of the notoriety of the Fast and Furious investigation, this case is really different from any other case. Appellant was not operating in the blind. He had ample information from which to articulate how the requested documents would be material that is favorable to the issues of sentencing or punishment. He had, number one, a 471-page report from the inspector general which detailed the failings of the Fast and Furious investigation, which is the investigation that gave rise to this prosecution. And, two, he had over – almost 2,400 pages from a congressional oversight committee, which included 211 pages of text. Again, each of these reports detailed the failings of the Fast and Furious investigation. But armed with all this information, appellant did not below and cannot now articulate how this information would be helpful, how these requested documents would be helpful. He can't because they are not material. And the district court recognized this. Now, was the request for the discovery a request premised solely on the suspicion that the government was holding back Brady material, or was it a request premised upon a broader proposition? The request that he made in the motion was based most on – both on Rule 16 and Brady, and it was for information relevant to sentencing factors, information that might be relevant to objections to the PSR enhancements. So – That's what I thought. So when I read on page 8 of your document presented to the district – presented to us in opposition to the interlocutory appeal, you write – or the government writes – finally, Stewart's claims are not effectively unreviewable on appeal. He claims that he has waived appeal as to discovery issues. However, the plea agreement recognizes the government's continuing obligation to provide information pursuant to Brady. Thus, Stewart can always appeal based on allegations that the government breached his plea agreement by failing to meet his obligation pursuant to Brady because his claims can be reviewed on appeal. Now, you start out with his claims, and you finish with his claims, and you just told me that his claims are broader than appeal. In the middle of that, what I've just read, you talk about Brady. But it sounds to me as though you have argued to us that because you can raise his claims, not limited to Brady, on appeal, the interlocutory appeal shouldn't go forward. Am I misreading what you wrote? I think essentially our claim in general was that a discovery order is not a final appealable order. And that's what we were trying to say. No, I don't want your general. I want your response to what the language that you wrote that I just read to you. Yes, I understand, Your Honor. I guess my response would be the following, is that what we were trying to say, or at least we tried to indicate in the papers, is that he could – if he could establish below that there was a Brady violation, then he could show a breach of the plea agreement, then he would – the waiver would no longer be valid. That's been the government's position. Then why did you write at the beginning of the paragraph and at the end of the paragraph his claims when you just told me that he was seeking more than just Brady material? He was seeking Brady and Rule 16. I don't – material, I understand what Your Honor is saying. Yeah, I mean, after his judicial estoppel, you may win on the merits. Right. But I'm trying to see how broad that argument was that you made, because for good reason, we don't like people to take – or like litigants to take a position at one point in litigation that's to their advantage, and then when it is no longer to their advantage, to take an opposite position. Right. Well, I guess the problem is he makes claims that are broad, and that's what we're referring to. The only thing that entitles him to that is a Brady – is under Brady. That's the position of the government. I got that. But it may be that you made a different argument than just Brady. Right. Well, maybe it was inartfully worded, because really, Brady is what entitles him to that information. And he hasn't shown a Brady violation because he hasn't shown a Brady violation. He hasn't shown a breach. But I'm inclined – and I speak only for myself – I'm inclined to stick you with the broader argument you just made. Now, you may win on the merits, but from my own mind, I would treat this as judicial appealability, because you've just said he can appeal his claims, not limited to Brady. Yeah. And I guess it's – the point I tried to make in our appellate brief is the argument was he can appeal his claims if he can show a breach below. We take issue that under his office – Well, if you had written that, I would feel differently. Well, that's really what we – what the government meant, and as argued in the appellate brief, is that if he had raised – if he had raised that below, then he would have been able to bring it up on appeal. And the Gonzales is different than the instant case here. Yeah. Well, I have to say, I'm speaking at this point only for myself, but I'm more interested in the merits of whether or not the district judge erred, assuming that the claim is in front of us, erred in denying this discovery request. And I hear the arguments that there really wasn't much of a showing, that this was going to produce information that was going to be much more useful than was already in the record. Absolutely, Your Honor. I mean, the best argument that he tried to make was that – I coined it as, you should have arrested me sooner, essentially, because of the prolonged investigation by guidance. Not that the government forced me or entrapped me to commit this crime. And I think case law, in terms of a departure of variance, really this Court has found that where there's been government wrongdoing, and only government wrongdoing, that that's not a basis for a departure, that it doesn't fulfill the goals of the Sentencing Reform Act, that is, to promote deterrence and to promote just laws. Well, I'd say I'm inclined to agree with you on this point, but I pause a little, because now that the guidelines are no longer mandatory, and now that the judge is very explicitly – district judge is very explicitly told, consider the whole range of conduct, look at it under 3553, we're back to an essentially discretionary sentencing regime if the district judge decides to take advantage of it. And who knows exactly what the – what argument will appeal to the district judge? Well, that goes back then to – even assuming this Court finds that he has made some showing, some threshold showing, which, again, the United States does not believe he has, that really he hasn't shown prejudice. I mean, he's armed with 211 pages from Congress that provide an excruciating detail, the failings, fast and furious. And even as he stands here before today, he says, well, I want to use it to show that, you know, the government came in with unclean hands, so it's unfair to call my client or punish my client for the number of weapons when they could have stopped it sooner. They have probable cause or reason to arrest him sooner. All those facts were available to him. He could have made that argument. He essentially did make that argument. If you look at the record below, when he tried to continue the sentencing, and the district court didn't agree that it was relevant to sentencing. Yeah. This is a different question. I'm not assuming that you were required to hand over the information. But why didn't you hand over the information? Because if you had, you wouldn't be standing here today having to make this argument. It really would have been futile to hand over the information. I think the district court recognized this. Again, this is a different case where there was so much information available to the defendant. The very reports that he's seeking or documents he's seeking were a subsection of the documents used to produce the congressional report. He had the entire congressional report, including exhibits of cash collection. No, no, you're not taking my point. My point is that when both sides operate on an open file basis in a criminal case, a lot of stuff never gets appealed because there's just plain old open file. And you wouldn't be having to stand here defending this. You may win, of course. But you would have saved yourself a lot of trouble if you'd handed over the documents. Now, you might have had good reasons not to hand them over. So I'm asking you, so why didn't you just hand them over? Because the documents, documents contain policies from ATF, internal policies, materials that were, could be considered a work product that really wouldn't be, even if Rule 16 were applicable here, while information that is Brady or relevant may be required to produce, were not required under the rules to produce that. So there is an interest in the government from that. And there's a broader interest in terms of when no showing is made, in terms of general judicial economy and delaying the proceedings here. Now, 7,000 documents may not seem like a lot of documents, but it took quite a while to go through. And if this Court were to sanction and say, look, you know, why not do it, what's the harm in doing it, and create that rule, you'd be sanctioning fishing expedition and cases. Nowadays, we have terabytes worth of information. But you say 7,000 documents may not be a lot. It sounds like a lot to me. All right. Thank you, Your Honor. Thank you, Mr. Herrigan. Mr. Rodriguez? I've got about a minute left, sir. Your Honor, the government's statement that this is a different case is entirely the problem with this situation. At the end of the day, all we're asking for is to be put on the same footing as the other two branches of the government. You have here the legislative branch that has access to the documents that we have not been given access to. Clearly, the executive branch has access to it. All we're asking for is to have someone, at a minimum, do an in-camera inspection of it and see whether or not there is any difference. Yeah, but you never asked for that. Did not, Your Honor. But we did ask to have it compelled. We did ask for it. And again, it was not an explicit situation where I wanted to take initiative and ask the Court to do that. But I did ask to have those documents produced. And it was always within the Court's ability to do that. And I think that dovetails with your comment or your question to the government as to why didn't they just produce it. Because it is a small matter to have at least made them available. And they were not made available. Thank you very much. Mr. Harrigan, thank you also. The case just argued is submitted. Good morning, gentlemen.
judges: Silverman, Fletcher, Bybee